UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

ABDUL Q. AWAN,

                    Plaintiff,

v.

OLGA KAZOLEAS-AWAN, CHRIS KAZOLEAS
CONSTANTINA KAZOLEAS, JANE DOE and
JOHN DOE,

                    Defendants.

------------------------------------------------------------

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
16-CV-6423 (MKB)

MARGO K. BRODIE, United States District Judge:

On November 18, 2016, Plaintiff Abdul Q. Awan, a resident of Pennsylvania proceeding *pro se*, commenced this action against his former wife and her parents, residents of New York, alleging tort claims arising out of a long and contentious state court proceeding dissolving Plaintiff's marriage to Defendant Olga Kazoleas-Awan ("Kazoleas"). Plaintiff seeks custody of his children, removal of the state family court proceeding to this Court and damages.[1] (Compl. 29, Docket Entry No. 1.)[2] Plaintiff paid the filing fee to commence this action. For the reasons discussed below, the Complaint is dismissed for lack of subject-matter jurisdiction, and Plaintiff

---

[1] On December 5, 2016, Plaintiff also filed with this Court a petition for removal of a related action brought against him by Defendants in the Supreme Court of New York, Kings County. *See* Notice of Removal, *Awan v. Kazoleas-Awan*, No. 16-CV-6872 (E.D.N.Y. Dec. 5, 2016), Docket Entry No. 1. On December 21, 2016, the Court *sua sponte* remanded that action to state court. Remand Order, *Awan v. Kazoleas-Awan*, No. 16-CV-6872 (E.D.N.Y. Dec. 21, 2016), Docket Entry No. 4.

[2] Although the majority of the Complaint is numbered by paragraph, the last several pages are not. The Court cites to paragraphs of the Complaint wherever possible.

is granted thirty (30) days from the date of this Memorandum and Order to file an amended complaint.

## I. Background

The following facts are taken from the Complaint and are accepted as true for the purposes of this Memorandum and Order. This suit arises out of the marriage-dissolution proceedings between Plaintiff and Kazoleas, and the attendant determinations regarding custody of their two minor children, M.K. and S.K. The Complaint generally alleges that Defendants engaged in fraud and coercion in divorce proceedings, depriving Plaintiff of custody, visitation rights and a relationship with his children and causing him physical and emotional distress. (*See generally* Compl.) Plaintiff and Kazoleas were married in 2000 and divorced in 2014. (Compl. ¶ 7.) Kazoleas was granted custody of the two children, and Plaintiff was granted visitation rights. (*Id.*)

Much of the Complaint is related to an event in 2015. Plaintiff alleges that on September 8, 2015, Kazoleas attacked Plaintiff after he attempted to contact their children the night before school started. (*Id.* ¶ 10.) According to the Complaint, Kazoleas and her parents, Constantina and Chris Kazoleas, filed a false police report against Plaintiff that accused him of attacking Kazoleas. (*Id.* ¶ 11.) Plaintiff was taken into custody and released the following day. (*Id.*) Plaintiff alleges that when he was released, Kazoleas filed a false report of child abuse with the Administration for Children's Services ("ACS") and filed a petition in family court for an order of protection. (*Id.* ¶¶ 12–14.) Plaintiff also alleges that between 2014 and 2015, Kazoleas attempted to falsify abuse charges and engaged in a "pattern of abuse and violence" against Plaintiff. (*Id.* ¶ 24.) The false reports and petitions Defendants filed relating to the September 8,

2015 assault caused him various injuries, including arrest and detention, damage to his reputation, an arrest record, and diminished contact with his children. (*Id.* ¶ 25–44.) Plaintiff further alleges that Kazoleas has mental health problems that continue to affect Plaintiff's life, that she has several times defrauded the courts, and that Defendants have negatively intervened in his access to his children. (*Id.* ¶¶ 46–56.)

Plaintiff alleges that Defendants have violated his "Civil Rights and Constitutional Rights" and that their conduct "constitutes criminal level violations of State and Federal laws and Hate Crimes." (*Id.* ¶ 1.) Plaintiff asserts nine causes of action in the Complaint, each of which arises under state tort law and relates to the divorce and child custody proceedings: fraud, malicious prosecution, abuse of process, false imprisonment, defamation, slander, intentional infliction of emotional distress, alienation of affection from his children, interference with visitation and assault and battery. (*Id.* ¶¶ 45–118.) Plaintiff primarily seeks the enforcement of a February 16, 2016 state court order permitting him to speak with his children on the telephone four times per week. (*Id.* ¶ 91.) Plaintiff alleges that Defendants have refused to comply with the state court order, and he demands $10,000 for each week that the order was breached. (*Id.* ¶¶ 93, 100.) Plaintiff states that he "file[d] a Contempt motion in the State Court[,] but the Courts have refused to adjudicate [it]." (*Id.* ¶ 101.)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

Regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case, *sua sponte*, if it determines that the action is frivolous or the court lacks jurisdiction over the matter. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000). If the court "determines at any time that it lacks subject-matter jurisdiction, the [c]ourt must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411 (2d Cir. 2015) (holding that a district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule

12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))).

### b. This court lacks jurisdiction over Plaintiff's claims

The subject matter jurisdiction of the federal courts is limited. Federal jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. For the reasons set forth below, the Court cannot exercise jurisdiction over the Complaint, as currently pled.

#### i. Federal question jurisdiction

To the extent Plaintiff seeks to invoke the Court's federal question jurisdiction by alleging a violation of his civil and constitutional rights, he has not pled "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim will be considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Here, although Plaintiff asserts that Defendants' actions "rise to the level of a Civil Rights and Constitutional Rights violation," (Compl. ¶ 1), he states no facts to support such claims.

Liberally construing the Complaint to bring claims pursuant to 42 U.S.C. § 1983, Plaintiff still has not stated a claim for a violation of his constitutional rights. Under Section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting Section 1983);

*Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (noting that in order to sustain a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). To establish a viable Section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted). Plaintiff has brought suit against private individuals, none of whom were alleged to have been "acting under color of state law" when they allegedly infringed on Plaintiff's constitutional rights. *See Matusick*, 757 F.3d at 55. Accordingly, Plaintiff's claims under Section 1983 are dismissed for failure to state a claim upon which relief can be granted.

### ii. Diversity jurisdiction

Plaintiff states that he brings this action under the Court's diversity jurisdiction, 28 U.S.C. § 1332. (Compl. ¶ 5.) Assuming that the citizenship of the parties is diverse,[3] Plaintiff's claims must nevertheless be dismissed because of the domestic relations exception to diversity jurisdiction.

---

[3] Plaintiff states that he resides in Pennsylvania, but he does not provide an address in Pennsylvania. His mailing address is a post office box in New York, New York. If Plaintiff files an amended complaint pursuant to the Court's diversity jurisdiction, he must provide facts to support his Pennsylvania citizenship.

It is well-settled that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–94 (1890); *see also United States v. Windsor*, 570 U.S. ---, ---, 133 S. Ct. 2675, 2691 (2013) ("[S]ubject to [constitutional] guarantees, regulation of domestic relations is an area that has long been regarded as a virtually exclusive province of the States." (citation and internal quotation marks omitted)). "So strong is [the Supreme Court's] deference to state law in this area that [the Supreme Court has] recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.'" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12–13 (2004) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)); *see also Keane v. Keane*, 549 F. App'x 54, 55 (2d Cir. 2014) (stating that the "domestic relations exception to subject matter jurisdiction generally encompasses . . . cases involving the issuance of a divorce, alimony, or child custody decree" (citation and internal quotation marks omitted)); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) ("Since the very early dicta [of] *In re Burrus*, 136 U.S. 586 (1890), it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and, a fortiori, rights of visitation."); *Ashmore v. New York*, No. 12-CV-3032, 2012 WL 2377403, at *1 (E.D.N.Y. June 25, 2012) ("Federal courts 'lack[] jurisdiction to interfere with . . . ongoing state court proceedings concerning the custody and care of . . . children.'" (alterations in original) (quoting *Abidekun v. N.Y.C. Bd. of Educ.*, No. 94-CV-4308, 1995 WL 228395, at *1 (E.D.N.Y. Apr. 6, 1995))).

Although the Supreme Court has advised that the exception generally "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree," *Ankenbrandt*, 504

U.S. at 704, the Second Circuit has repeatedly held that "subject matter jurisdiction may be lacking in actions directed at challenging the results of domestic relations proceedings," *Martinez v. Queens Cty. Dist. Att'y*, 596 F. App'x 10, 12 (2d Cir. 2015), and that "a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages," *Schottel v. Kutyba*, No. 06-CV-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009). *See also Keane*, 549 F. App'x at 55 (affirming dismissal of a plaintiff's action for fraud against her ex-husband under domestic relations exception); *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) ("A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." (quoting *Bossom v. Bossom*, 551 F.2d 474, 475 (2d Cir. 1976))); *cf. Minot v. Eckardt-Minot*, 13 F.3d 590, 593–94 (2d Cir. 1994) (affirming district court decision to remand to state court after abstaining from case seeking to enforce New York custody orders).

Here, multiple aspects of the Complaint militate against jurisdiction. Plaintiff demands not only monetary damages, but asks the Court to alter a state court judgment granting custody of his children to his ex-wife, which clearly falls within the domestic relations exception because it seeks the alteration of a custody order. (*See* Compl. 29); *Ankenbrandt*, 504 U.S. at 704. Plaintiff demands immediate access to and full custody of his children, seeks to enjoin Defendants from traveling with his children, and seeks to remove related cases to this Court. (Compl. 29.) He brings causes of action steeped in New York state law, such as "alienation of affection from his children," (*id.* ¶¶ 98–105), and "interference with visitation," (*id.* ¶ 120). The Second Circuit has expressly stated that "the recognition and delineation of [the tort of custodial

interference] is clearly a difficult matter of great public import for New York law" because "[a] tort doctrine that permitted parents to vindicate their custody rights by obtaining money judgments against alleged transgressors would significantly change the landscape of custody disputes." *Minot*, 13 F.3d at 594. "A state court should lead the way in developing its law in this area, balancing the delicate issues involved here." *Id.*

Moreover, the Complaint alleges "no obstacle to determination of the matrimonial issues by way of a state court action," *see Am. Airlines*, 905 F.2d at 14, except to state that "[c]ourts have refused to adjudicate" the contempt of the custody order, (Compl. ¶ 92). This action plainly requires the Court to "interpret New York's domestic relations law, or otherwise to immerse itself in domestic relations matters that are properly the province of the state courts," *Am. Airlines*, 905 F.2d at 15, including what is best for Plaintiff and Kazoleas' children. Most importantly, these issues appear to be pending in state court, before several judges whose names are mentioned sporadically throughout the Complaint. (*See* Compl. ¶ 106 (stating that Plaintiff "filed 2 motions previously, to dismiss the petition and a fraudulent order of protection," and that "the court should have defaulted [Kazoleas] for refusing to respond and after the Judge specifically ordered the defendant . . . [t]o reply").)[4] The Court cannot review Plaintiff's claims

---

[4] To the extent that Plaintiff asks this Court to review state court judgments regarding the dissolution of his marriage or his custody dispute with Kazoleas, the *Rooker-Feldman* doctrine precludes this Court from doing so. Under the *Rooker-Feldman* doctrine, federal courts generally lack subject matter jurisdiction over claims that seek review of adverse state court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings."); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923) (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors"); *see also Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014) (denying relief "[t]o the extent that [the plaintiff] only seeks a

because they "begin and end in a domestic dispute," and are thus a matter of state domestic relations law. *Schottel*, 2009 WL 230106, at *1.[5]

c. **Leave to amend**

Interpreting the Complaint to raise the strongest arguments it suggests, Plaintiff has failed to provide a basis for the exercise of this Court's subject matter jurisdiction under either federal question or diversity jurisdiction. However, in view of Plaintiff's *pro se* status, he is granted thirty (30) days from the date of this Memorandum and Order to file an amended complaint, to the extent that he has claims disassociated from the custodial and domestic dispute or claims that fall within the Court's federal question jurisdiction. *See Cruz v. Gomez*, 202 F.3d 593, 597–98

---

declaration that his state conviction is invalid, [because the plaintiff] seeks nothing more than review of a state court judgment"); *Galtieri v. Kelly*, 441 F. Supp. 2d 447, 453 (E.D.N.Y. 2006) ("[F]ederal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005))).

Jurisdiction is also lacking where a plaintiff's claims before a district court are "inextricably intertwined" with a state court's determinations. *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002) (quoting *Feldman*, 460 U.S. at 483 n.16). The Second Circuit has held that "inextricably intertwined means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding . . . subsequent litigation of the claim will be barred under [*Rooker-Feldman*] if it would be barred under the principles of preclusion." *King v. Comm'r & N.Y.C. Police Dep't*, 60 F. App'x 873, 875 (2d Cir. 2003) (quoting *Moccio v. N.Y. State Office of Ct. Admin.*, 95 F.3d 195, 197 (2d Cir. 1996)). Based on the facts in the Complaint, it appears that this issue, or issues inextricably intertwined with it, may already have been litigated and decided by state courts. (*See* Compl. ¶ 106.)

[5] The plaintiff in *Schotell v. Kutyba*, No. 06-CV-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009), similarly alleged that the defendant's fraud and coercion in divorce proceedings deprived her of custody and visitation rights. *Schotell*, 2009 WL 230106, at *1. Although the plaintiff's proposed amended complaint only sought monetary damages, the Second Circuit held that "the gravamen of her claim involves dissolution of marriage — an area at the core of the domestic relations exception. Her complaint makes clear that her tort claim for monetary damages is, at heart, a dispute surrounding the custody of her child." *Id.* (citation omitted). Similarly here, the Complaint makes clear that Plaintiff's tort claims are, "at heart, a dispute surrounding the custody of [his children.]" *See id.*

10

(2d Cir. 2000). The amended complaint must allege a basis for this Court's jurisdiction and set forth Plaintiff's claims against each defendant and the relief he seeks. If Plaintiff invokes the Court's diversity jurisdiction in his amended complaint, he must provide details of his Pennsylvania citizenship and a good-faith basis for satisfying the amount-in-controversy requirement of 28 U.S.C. § 1332. Plaintiff is advised to consider the doctrines described in this Memorandum and Order and keep in mind that claims arising from his divorce, child custody and visitation proceedings are likely to be dismissed by this Court under the domestic relations exception to jurisdiction.

### III. Conclusion

For the reasons explained above, the Court finds that it lacks subject matter jurisdiction over the Complaint. Fed. R. Civ. P. 12(h)(3). However, Plaintiff is granted leave to file an amended complaint within thirty (30) days from the entry of this Memorandum and Order. Plaintiff is further directed that his amended complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure, and it must "plead enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiff must provide facts pertinent to each claim and cannot rely on generalized allegations of misconduct. Plaintiff is advised that any amended complaint he files will completely replace the original complaint, must be captioned "Amended Complaint," and must bear the same docket number as this Order.

All further proceedings shall be stayed until the expiration of the time granted to file an amended complaint or until an amended complaint is filed, whichever occurs first. If Plaintiff fails to file an amended complaint within thirty days, this action will be dismissed without prejudice to its refiling in a court of appropriate jurisdiction. Although Plaintiff paid the filing

11

fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

s/ MKB

MARGO K. BRODIE
United States District Judge

Dated: January 24, 2017
      Brooklyn, New York